Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEE WENZEL, Individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>SEMICONDUCTOR MANUFACTURING INTERNATIONAL CORPORATION, ZIXUE ZHOU, HAIJUN ZHAO, and MONG SONG LIANG,<br><br>        Defendants. | Case No:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>CLASS ACTION</u><br><br>JURY TRIAL DEMANDED |

Plaintiff Lee Wenzel ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through her attorneys, which included, among other things, a review of the Defendants' public documents, announcements, public filings, wire and press

- 1 -

releases published by and regarding Semiconductor Manufacturing International Corporation ("SMIC" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded SMIC securities between April 23, 2020 and September 26, 2020, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4.      This Court has jurisdiction over each defendant named herein because each defendant has sufficient minimum contacts with this judicial district so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

5.      Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b) as Defendants conducts business in this District and a significant portion of the Defendants' actions and the subsequent damages took place within this District.

Class Action Complaint for Violation of the Federal Securities Laws

6.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

7.     Plaintiff, as set forth in the accompanying Certification, purchased the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

8.     Defendant SMIC purports to be an investment holding company principally engaged in the computer-aided design, manufacture, testing, packaging and trading of integrated circuits ("IC"), as well as the provision of other semiconductor services. The Company is also involved in the design and manufacture of semiconductor masks and various types of wafers. The Company distributes its products in China and to overseas markets, such as the Europe and the United States.

9.     The Company is incorporated in the Cayman Islands and its headquarters are located at No. 18 Zhangjiang Road, Pudong New Area, Shanghai 201203, People's Republic of China. The Company's sponsored American depositary receipts ("ADRs") trade over-the-counter on the OTCQX exchange under the ticker symbol "SMICY."

10.     Defendant Zixue Zhou ("Zhou") has served as the Company's Chairman throughout the Class Period.

11.     Defendant Haijun Zhao ("Zhao") has served as the Company's Co-Chief Executive Officer ("Co-CEO") and Executive Director throughout the Class Period.

12.     Mong Song Liang ("Liang") has served as the Company's Co-CEO and Executive Director throughout the Class Period.

Class Action Complaint for Violation of the Federal Securities Laws

13.     Defendants Zhou, Zhao, and Liang are collectively referred to herein as the "Individual Defendants."

14.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

15.     The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

16.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

Class Action Complaint for Violation of the Federal Securities Laws

17.    The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements

18.    On April 23, 2020, SMIC filed its 2019 Annual Report with the Stock Exchange of Hong Kong (the "HKEX"). The 2019 Annual Report included a "Letter to Shareholders" which was signed by Defendants Zhou, Zhao, and Liang, and stated the following regarding SMIC's overseas relationships and business:

> . . . Over the past two years, through strenuous corporate reform, we have built up stronger and more competent R&D, operations, supporting teams, and management, while successfully developing and preparing a variety of technology platforms. ***We also have strengthened mutual trust and cooperation with domestic and oversea customers and suppliers. The foundation laid by these vigorous efforts has further strengthened our confidence in the future.***
>
> We would like to again express our sincere gratitude to our shareholders, customers, suppliers, and employees for their continued care and support of SMIC.

(Emphasis added.)

19.    The 2019 Annual Report stated the following, in pertinent part, regarding its overseas business:

> With an expanded manufacturing base, well-balanced technology portfolio and one-stop shop service offerings, ***the Group is well positioned with its global operations to serve both domestic and worldwide customers***.

*        *        *

- 5 -

Class Action Complaint for Violation of the Federal Securities Laws

**CUSTOMERS AND MARKETS**

The Group continues to serve a broad global customer base comprising leading integrated device manufacturers, fabless semiconductor companies and system companies. Geographically, customers from the North America contributed 26.4% of the Group's overall revenue in 2019, compared to 31.6% in 2018. Leveraging on the Group's strategic position in China, our China revenue contributed 59.5% of the Group's overall revenue in 2019, compared to 59.1% in 2018. Eurasia contributed 14.1% of the overall revenue in 2019, compared to 9.3% in 2018.

(Emphasis added.)

20.    The 2019 Annual Report stated the following, in pertinent part, regarding SMIC's business in China, without disclosing its ties to the Chinese military:

Notably, as indicative of future revenue growth, we continued to see new designs using both specialty technology and advanced technology, in particular on 0.18µm, 0.11/0.13µm, 55/65nm, 40/45nm, 28nm and 14nm FinFET process technologies. The Group has, in each of its sales regions, customers utilizing its most competitive specialty technology and advanced node technology. We believe China is rapidly closing the gap with the rest of the world in terms of innovation and design capabilities. ***To fully leverage the market growth potential in China, the Group plans to continue to deepen its collaboration with Chinese customers while broadening relationships with its global customers and enable their success in China*** and various emerging markets, such as mobile computing, automotive electronics, IoT, high performance computing, 5G, industrial, security and surveillance, Artificial Intelligence ("AI"), and edge computing related applications.

***SMIC's role in the China ecosystem is becoming increasingly important as we work hard to provide expanded technology, capacity, and solutions to address growing market demands.*** We are pleased to see growth from both existing and new customers. Meanwhile, we continue our focus to serve an international market, while having the

Class Action Complaint for Violation of the Federal Securities Laws

natural advantage of being close to the largest IC market. ***SMIC's aim is to be the first-choice in China for a comprehensive range of foundry services.*** We are gaining confidence in our ability to steadily climb, with focused prudent efforts, to become a respected provider in the advanced node foundry market.

(Emphasis added.)

21.   The 2019 Annual Report stated the following, in pertinent part, regarding the Company's controls, risks, and compliance:

> The Group has implemented Internal controls and other risk management measures designed to mitigate the principal risks which the Group faces in its financial condition and operations, including but not limited to the cyclicality of the semiconductor manufacturing industry, fluctuations in purchase price of raw materials, fluctuations in global financial markets and currencies, inability to keep up with technology migration and difficulty to attract and retain technical and managerial talents.

*     *     *

> **RISK MANAGEMENT AND INTERNAL CONTROLS**
>
> The Board is responsible for ensuring that the Group maintains sound and effective risk management and internal control systems and for overseeing management in the operating of such systems on an ongoing basis. Under the Corporate Governance Code issued by HKEX, management should provide a confirmation to the Board on the effectiveness of such systems. ***The successful risk management and internal control systems are designed to ensure the achievement of business objectives in operations, financial reporting and compliance with applicable laws and regulations.*** They are also designed to manage, rather than completely eliminate, risks impacting the Group's ability to achieve its business objectives. Accordingly, the risk management and internal control systems can only provide reasonable but not absolute assurance that the financial statements do not contain a material misstatement or loss.

Class Action Complaint for Violation of the Federal Securities Laws

Based on the Enterprise Risk Management — Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO"), the Board supervises the management's designing, implementing and monitoring the risk management system to ensure the effectiveness of the risk management programs. The implementation methods of the management are as follows:

• identifying risks, such as operational risk, strategy risk, market risk, legal risk and financial risk, etc.;
• assessing the identified risks by considering the impacts (including financial, reputation, business continuity & operational) and likelihoods of their occurrence;
• designing, operating and monitoring internal control systems, and evaluating the effectiveness of implementation to mitigate and control such risks; and
• monitoring the risk early warning index on the material risks.

***The Board has reviewed the effectiveness of risk management and internal control systems of the Group once a year and has required strengthening the comprehensive anti-fraud mechanism ensured that the risk management and internal control systems in place are effective.***

\*      \*      \*

**SOCIAL RESPONSIBILITY**

***At SMIC, we comply with strict legal requirements for corporate governance, financial accounting, and transparent reporting. Our business practices also are ethical, safe, environmental friendly, and fair to our employees, in accordance with all the laws, rules, and regulations of the countries where we operate. In addition to obeying the letter and mandates of such laws, we seek to promote their spirits.*** Through our CSR Program (http://www.smics.com/en/site/responsibility_social), we hope to advance social, environmental, and ethical responsibility according to internationally recognized standards.

(Emphasis added.)

Class Action Complaint for Violation of the Federal Securities Laws

22.    On July 7, 2020, SMIC filed with the HKEX its 2019 Corporate Social Responsibility Report which included a "Message from the Chairman" from Defendant Zhou which stated the following, in pertinent part, regarding the Company's relationships in China and overseas:

> In the past few years, through unprecedented reforms, we have formed more powerful R&D, operations, supporting and management teams. ***We have developed and reserved diversified technology platforms and strengthened trusting cooperation with customers and suppliers at home and abroad.***
>
> *       *       *
>
> While seeking sustainable development, SMIC is committed to caring for people, the environment, and society. ***We work with industry chain partners to implant the concept of sustainable development in all aspects of business operations.***

(Emphasis added.)

23.    The 2019 Corporate Social Responsibility Report stated the following, in pertinent part, regarding the Company's compliance:

> ***As an international company, SMIC must comply with strict legal requirements for corporate governance, financial accounting, and transparent reporting. Our business practices also must be ethical, safe, environmentally sound, and fair to our employees, in accordance with all the laws, rules, and regulations of the countries where we operate.***
>
> *       *       *
>
> **Social Responsibility Policy**
>
> ***In addition to obeying the letter and mandates of such laws, we seek to promote their spirits.*** Through our CSR Program, we hope to advance social, environmental, and ethical responsibility according to

- 9 -

Class Action Complaint for Violation of the Federal Securities Laws

internationally recognized standards. In short, we intend to remain worthy of our inclusion in the Hang Seng Corporate Sustainability Index Series as a company that has "attained a high standard of performance in the environmental, social and corporate governance areas".

\*       \*       \*

**Regulatory Compliance**

**Export Compliance Management**

SMIC establishes an internal compliance program (ICP) to ensure our compliance with international export control laws and treaties on high-technology products. ***The United States and many other countries have joined the international export control system.*** Suppliers and customers in these countries generally need to obtain export licenses to transport controlled items (such as equipment, parts, materials, software, or technology) to China. ***We, as well as relevant suppliers and customers, strictly abide by the restrictions and regulations of these export licenses.*** We incorporate the internal compliance program into the ICP handbook, including policies and procedures to ensure compliance with all legal requirements. Our ICP handbook contains 10 elements[.] [Chart omitted.]

In order for all employees to fully understand our internal compliance obligations, the CEO issues an export compliance policy statement that must be acknowledged and signed by all employees. Our ICP team conducts regular training and maintains the ICP web page on our company intranet. Meanwhile, our ICP compliance is verified in regular audits by vendors and government officials.

(Emphasis added.)

24.     The 2019 Corporate Social Responsibility Report stated the following, in pertinent part, regarding the Company's supply chain and suppliers:

Class Action Complaint for Violation of the Federal Securities Laws

**Responsible Business Alliance**

In 2013, we began assessing our environmental, health, safety, labor, and ethical management using the Responsible Business Alliance Online Risk Assessment (RBA-ON) system, and developing a continuous improvement plan for the existing risks. In 2019, the Company and its plants were rated at low risk upon assessment. We will continue to make improvement and try to keep the risk at a lower level as far as possible. Besides adhering to the RBA Code itself, SMIC also requires suppliers to comply with the Code and fulfill their social responsibility. Key suppliers must sign an undertaking to this effect. According to the implementation performance of suppliers, we conducted on-site audit on major domestic suppliers in 2019, and once again promoted the Code.

\* \* \*

**Supply Chain Management**

**Supply Chain Overview**

Integrated circuit manufacturing is in the middle of the entire integrated circuit industry and is connected with both upstream and downstream industries. ***As a large local company in China, we procure a wide variety of products and materials including production equipment, maintenance parts, raw materials, factory facilities, firefighting facilities, and professional services. We strive for mutually beneficial cooperation with suppliers to help improve overall social responsibility management capabilities in our supply chain, reduce risk,*** safeguard stable production and operation, and ensure high-quality customer service.

\* \* \*

**Supplier Management Mechanism**

SMIC has established a sound supplier management system, specially to manage key links in our supply chain. These include supplier access regulations, supplier evaluation regulations and supplier promotion regulations.

Class Action Complaint for Violation of the Federal Securities Laws

**Supplier Admittance**

We have developed an access assessment mechanism for new and alternative suppliers. The departments involved in the supplier admittance assessment the Quality Management Department, Environmental/Safety/ Hygiene Department, CSR Department, Procurement Department, and user organizations. They assess suppliers in areas including product quality parameters, supplier quality, supplier environmental/ safety/hygiene, human rights, business ethics, warehousing/logistics, after-sales service management, production, and product usage. Suppliers can be included in our approved vendor list and considered for contracts only after they meet our relevant qualification requirements with a satisfactory score.

**Supplier Assessment and Evaluation**

**Supplier Quality and Business Assessment and Evaluation**

***We monitor supply chain risks using an assessment and evaluation mechanism for contracted suppliers.*** We score them every six months based on scoring indexes covering areas including quality, cost, delivery, service, safety, and environmental performance. For projects that fail to reach the standards, the supplier must provide an improvement plan and make improvements within a certain period.

(Emphasis added.)

25.    On August 6, 2020, SMIC filed with the HKEX its Unaudited Results for the Three Months Ended June 30, 2020 which quoted Defendants Zhao and Liang touting the Company's Chinese and international business: "SMIC is committed to innovation and development, ***capturing domestic and international opportunities***, ***providing quality products and services to an increasing number of customers locally and globally***, and driving the company's continued growth." (Emphasis added.)

Class Action Complaint for Violation of the Federal Securities Laws

26.    The statements referenced in ¶¶18-25 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) there was an "unacceptable risk" that equipment supplied to SMIC would be used for military purposes; (2) SMIC was foreseeably at risk of facing U.S. restrictions; (3) as a result of restrictions by the U.S. Department of Commerce, certain of SMIC's suppliers would need "difficult-to-obtain" individual export licenses; and (4) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

## THE TRUTH EMERGES

27.    On September 4, 2020, after market hours, *Reuters* published an article entitled "EXCLUSIVE-Trump administration weighs blacklisting China's chipmaker SMIC" which announced the following, in pertinent part:

> The Trump administration is considering whether to add China's top chipmaker SMIC to a trade blacklist, a Defense Department official said on Friday, as the United States escalates its crackdown on Chinese companies.
>
> A Pentagon spokeswoman said the Defense Department was working with other agencies to determine whether to make the move against Semiconductor Manufacturing International Corporation, which would force U.S. suppliers to seek a difficult-to-obtain license before shipping to the company

28.    On this news, SMIC's ADR price fell $3.08 per ADR, or over 20%, to close at $12.02 per ADR on September 8, 2020, the next trading day.

Class Action Complaint for Violation of the Federal Securities Laws

29.    On September 26, 2020, *Reuters* published an article entitled "U.S. tightens exports to China's chipmaker SMIC, citing risk of military use" which announced the following, in pertinent part:

> The United States has imposed restrictions on exports to China's biggest chip maker SMIC after concluding there is an "unacceptable risk" equipment supplied to it could be used for military purposes.
>
> Suppliers of certain equipment to Semiconductor Manufacturing International Corporation 0981.HK will now have to apply for individual export licenses, according to a letter from the Commerce Department dated Friday and seen by Reuters.

30.    On this news, SMIC's ADR price fell $0.57 per ADR, or 4.7%, to close at $11.47 per ADR on September 28, 2020, the next trading day.

31.    As a result of Defendants' wrongful acts and omissions, and the decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

32.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired SMIC securities publicly traded on the OTCQX market during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of SMIC and its subsidiaries, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

33.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, SMIC securities were actively traded on the OTCQX market. While the exact number of Class members is unknown to

Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

34.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

35.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

36.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;
- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;
- whether the Individual Defendants caused the Company to issue false and misleading public statements during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false and misleading public statements during the Class Period;

Class Action Complaint for Violation of the Federal Securities Laws

- • whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- • whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

37.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

38.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- • Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- • the omissions and misrepresentations were material;

- • the Company's securities are traded in efficient markets;

- • the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

- • the Company's securities traded on the OTCQX market, and was covered by multiple analysts;

- • the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- • Plaintiff and members of the Class purchased and/or sold the Company's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

Class Action Complaint for Violation of the Federal Securities Laws

39.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

40.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

### COUNT I

**Violation of Section 10(b) of The Exchange Act and Rule 10b-5
Against All Defendants**

41.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

42.     This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

43.     During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

44.     The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

45. The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

46. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

47. As a result of the foregoing, the market price of the Company's securities were artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing

Class Action Complaint for Violation of the Federal Securities Laws

the Company's securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

48.     Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

49.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

50.     By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

51.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

52.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

53.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct

Class Action Complaint for Violation of the Federal Securities Laws

1  promptly any public statements issued by the Company which had become materially

2  false or misleading.

3        54.    Because of their positions of control and authority as senior officers, the

4  Individual Defendants were able to, and did, control the contents of the various

5  reports, press releases and public filings which the Company disseminated in the

6  marketplace during the Class Period. Throughout the Class Period, the Individual

7  Defendants exercised their power and authority to cause the Company to engage in

8  the wrongful acts complained of herein. The Individual Defendants therefore, were

9  "controlling persons" of the Company within the meaning of Section 20(a) of the

10  Exchange Act. In this capacity, they participated in the unlawful conduct alleged

11  which artificially inflated the market price of the Company's securities.

12        55.    Each of the Individual Defendants, therefore, acted as a controlling

13  person of the Company. By reason of their senior management positions and/or being

14  directors of the Company, each of the Individual Defendants had the power to direct

15  the actions of, and exercised the same to cause, the Company to engage in the

16  unlawful acts and conduct complained of herein. Each of the Individual Defendants

17  exercised control over the general operations of the Company and possessed the

18  power to control the specific activities which comprise the primary violations about

19  which Plaintiff and the other members of the Class complain.

20        56.    By reason of the above conduct, the Individual Defendants are liable

21  pursuant to Section 20(a) of the Exchange Act for the violations committed by the

22  Company.

23                                  **PRAYER FOR RELIEF**

24        **WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

25        A.    Determining that the instant action may be maintained as a class action

26  under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the

27  Class representative;

28

- 20 -

Class Action Complaint for Violation of the Federal Securities Laws

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: December 10, 2020                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Laurence M. Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

Class Action Complaint for Violation of the Federal Securities Laws